SAMUEL NECHAMKIN et al., Plaintiffs, *v.* IRVING PICKER, et al., Copartners Doing Business under the Name of PICKER PHARMACY, Defendants.

Supreme Court, Special Term, Nassau County, November 21, 1946.

*Joseph J. Hammer* for plaintiffs.

*Frances Kneitel* for defendants.

STODDART, J. Motion for a temporary injunction.

The parties to the action are all engaged in business in Lynbrook, New York. They are competing pharmacists, selling at retail patent medicines, drugs, cosmetics and other products.

It is claimed that the defendants for some time have been violating sections 369-a and 369-b of the General Business Law, commonly known as the New York State Fair Trade Act, by issuing to customers cash register receipts which are redeemable for merchandise valued at twenty-five cents upon the presentation of receipts totaling $10. The defendants admit the practice of giving cash receipts but deny the violation of any law, contending that they were merely following a long-established trade practice of allowing a cash discount.

The Fair Trade Law, as contained in the General Business Law, reads in part as follows: " § 369-a. *Price fixing of certain commodities permitted.* 1. No contract relating to the sale or resale of a commodity which bears, or the label or content of which bears, the trade mark, brand, or name of the producer or owner of such commodity and which is in fair and open competition with commodities of the same general class produced by others shall be deemed in violation of any law of the state of New York by reason of any of the following.

provisions which may be contained in such contracts: (a) That the buyer will not resell such commodity except at the price stipulated by the vendor; (b) That the vendee or producer require any dealer to whom he may resell such commodity to agree that he will not, in turn, resell except at the price stipulated by such vendor or by such vendee.

"2. Such provisions in any contract shall be deemed to contain or imply conditions that such commodity may be resold without reference to such agreement in the following cases: (a) In closing out the owner's stock for the purpose of discontinuing delivering any such commodity. (b) When the goods are damaged or deteriorated in quality, and notice is given to the public thereof. (c) By any officer acting under the orders of any court." (Added by L. 1940, ch. 195, § 3, eff. March 19, 1940.)

"§ 369-b. *Unfair competition defined and made actionable.* Wilfully and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provision of section three hundred sixty-nine-a, whether the person so advertising, offering for sale or selling is or is not a party to such contract, is unfair competition and is actionable at the suit of any person damaged thereby." (Added L. by 1940, ch. 195, § 3, eff. March 19, 1940.)

The plaintiffs do not urge that the defendants have advertised or sold any product below the minimum price fixed by the "producer or owner of such commodity" but they complain that the practice of subsequently redeeming the cash receipts has the same effect.

Apparently no New York court has passed upon this question but in the State of California, where the Fair Trade Law originated, and from the statute there enacted the New York act was copied, a similar practice was the subject of adjudication by an appellate court (*Weco Products Co.* v. *Mid-City Cut-Rate Drug Stores,* 55 Cal. App. 2d 684). There, trading stamps were given to cash purchasers "at the rate of one stamp with each ten cents of the sale price of articles purchased.* * * Each stamp had a cash value of two mills. Stamps were given to every customer paying cash at the time of purchase and requesting trading stamps. They were redeemed by defendant upon presentation of five hundred stamps collected in a book given by defendant to customers for that purpose, redemption value for a book of five hundred being $1.00 cash or, at the option of the purchaser, $1.25 merchandise.

" Inasmuch as trading stamps were given by defendant upon sales of plaintiff's commodities, plaintiff contends that the scheduled minimum prices of his commodities were reduced by exactly the amount of the cash value of the stamps, to wit, by two mills upon each ten cents. In other words, plaintiff insists that the giving of trading stamps was in reality a disguised form of price cutting.

" The question before us for consideration, therefore, may be stated as follows: Does the giving of trading stamps, redeemable for cash or merchandise, constitute a violation of the Fair Trade Act when such stamps are given with commodities sold at the minimum prices stipulated by the producer under said act? This query is best answered, we believe, by a consideration of the nature and purpose of the trading stamp coupons. Are they to be regarded as a discount for cash, as a means of advertising, a device to entice customers and to retain their trade, or do they simply represent a cut in the sale price of the articles with which they are given? If the latter, they accomplish a cut in the established price of merchandise; and where such merchandise is sold at minimum Fair Trade Act prices, the giving of trading stamps then amounts to a sale below such prices.

" If, however, the stamps are given by the merchant in the nature of an inducement to customers to attract them to his store, the practice is in the nature of an advertising device, and is no more to be condemned as violative of the Fair Trade Act than would be such commonly employed devices as free parking room, care of infants and other plans offered by some mercantile establishments in competition with their rivals. Free parking for automobiles of customers might be said to result in a lesser price paid by a customer for goods purchased, yet it could hardly be reasonably contended that thereby a violation of the Fair Trade Act had been worked.

" Neither can it be asserted that by giving discounts for cash the terms of the statute in question are contravened. A cash discount is a reward for prompt payment. It is a trade practice long established, and is authoritatively recognized as being not a deduction from the purchase price. Montgomery, Auditing Theory and Practice, pp. 499–500.'' That court concluded that there was no violation of the Fair Trade Act, citing many authorities which recognized the practice of " discounting bills in consideration for the immediate payment of cash ''.

The papers submitted on the motion reveal that many items sold by the defendants were not covered by fair trade con-

tracts. The items whose minimum prices were covered were not the only items entitling a purchaser to a cash receipt. Any item purchased for cash was accompanied by said receipt. I concur with the view expressed in the California decision that this practice should be classified as a " cash discount " rather than a " price cut ".

Accordingly, the motion is denied. Settle order on notice.